IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BENEDICT EMESOWUM, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-15-CV-831-XR |
| | § | |
| ADAM ZELDES, JOHN DOE, CITY OF | § | |
| SAN ANTONIO, and GRANT | § | |
| RUEDEMANN, | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

On this date, the Court considered Magistrate Judge John W. Primomo's Memorandum and Recommendation (docket no. 25) and Plaintiff Benedict Emesowum's Response (docket no. 32). After careful consideration, the Court will accept the Magistrate Judge's recommendation to deny Emesowum's Motion for Summary Judgment (docket no. 13) and dismiss his claims with prejudice in part and without prejudice in part. The Court will also grant Defendant City of San Antonio's Motion to Strike Plaintiff's Amended Complaint (docket no. 47), deny Plaintiff's Motion to Amend Complaint (docket no. 50), grant Defendant's Motion to Quash (docket no. 39), and deny Plaintiff's motions for sanctions (docket nos. 62 and 63). All other pending motions (docket nos. 57 and 58 and the extraneous motions in docket no. 46) are dismissed as moot.

## BACKGROUND

The relevant facts in this case appear to be undisputed. In his Complaint, Emesowum states that he was standing in the San Antonio Greyhound bus station on August 15, 2015, when

1

a Greyhound security guard approached and asked him to produce his ticket.  Docket no. 1 at 2.

Emesowum believed this was racial profiling and refused to produce the ticket.  *Id.* at 3.  As a

result, the security guard called 911 and asked for police officers to be dispatched to the police

station.  *Id.*

San Antonio Police Department ("SAPD") Officers Adam Zeldes and Grant Ruedemann

arrived approximately twenty minutes later and approached Emesowum to discuss the situation.

*Id.*   Emesowum claims that the officers began to argue with him about whether or not the

security guard had a right to see Emesowum's ticket and ask him to leave the station.  *Id.*   At

some point, Officer Zeldes asked Emesowum to produce his identification.  *Id.*   Emesowum

refused and was arrested.  *Id.*   Emesowum claims that the officers then proceeded to search his

backpack and wallet.  *Id.* at 5.  A few minutes later, he was taken to jail in a police van.  *Id.*   He

was released later that evening and boarded a bus to Houston the next day.  *Id.*   He later returned

to San Antonio to retrieve his backpack, which had been seized by the SAPD property division.

*Id.*

Now, Emesowum attempts to bring claims against Officer Zeldes, Officer Ruedemann,

and the City of San Antonio ("Defendants").  *Id.* at 1.  The Complaint lists wrongful arrest, false

imprisonment, unreasonable search and seizure, denial of due process, and excessive force as

causes of action via 42 U.S.C. § 1983.  *Id.* at 10.  The Complaint also states that the City of San

Antonio "adopted policies, procedures, practices, or customs" that allowed the alleged violations

of Emesowum's rights to occur.  *Id.*

Shortly after receiving Defendants' answers, Emesowum filed a Motion for Summary

Judgment (docket no. 13) which was reviewed by Magistrate Judge John W. Primomo.  Judge

Primomo found that: (1) Emesowum was subject to arrest for criminal trespass, as the Greyhound security guard who initially asked to see his travel ticket and requested that he leave was authorized to request that he leave; (2) Emesowum was lawfully arrested, rendering both the seizure of his property and his imprisonment lawful, as both were incidental to his lawful arrest; (3) the officers who arrested Emesowum were acting under the color of law, entitling them to qualified immunity; and (4) Emesowum failed to articulate any facts to substantiate his excessive force claim. Docket no. 25. As a result, Judge Primomo recommended that the Court deny Emesowum's Motion for Summary Judgment and dismiss the claims. *Id.* at 10. Emesowum filed a Response, which the Court construes as his objections, in which he essentially argues that the Defendants committed perjury and since he was neither charged with nor convicted of criminal trespassing, his arrest was illegal and unwarranted. *See* docket no. 32.

Before the Court are Emesowum's Motion for Summary Judgment, Defendants' Motion to Strike Emesowum's Amended Complaint and his Motion for Leave to File an Amended Complaint, Emesowum's Motions for Sanctions, and various discovery motions. The Court will consider each in turn.

## DISCUSSION

### I.     Memorandum and Recommendation and Motion for Summary Judgment

A. <u>Review of a Memorandum and Recommendation</u>

Where no party has objected to the Magistrate Judge's Memorandum and Recommendation, the Court need not conduct a *de novo* review of it. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made."). In such cases,

the Court need only review the Memorandum and Recommendation and determine whether it is either clearly erroneous or contrary to law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).

On the other hand, any Memorandum and Recommendation that is objected to requires *de novo* review. Such a review means that the Court will examine the entire record and will make an independent assessment of the law. The Court need not, however, conduct a *de novo* review when the objections are frivolous, conclusive, or general in nature. *Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987). In this case, Emesowum objected to the Magistrate Judge's recommendation, so the Court will conduct a *de novo* review. Docket no. 32.

B. <u>Summary Judgment Standard</u>

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court must draw reasonable inferences and construe evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a

4

scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

   C. <u>Analysis</u>

     Emesowum filed a Motion for Summary Judgment arguing that he is entitled to judgment as a matter of law because the "[d]efendants have not disputed" any of his claims. Docket no. 13 at 1. He argues that he should be granted summary judgment on his false arrest claim because his criminal case was dismissed. *Id.* at 2. He contends that he should be granted summary judgment on his false imprisonment claim because he was imprisoned for nine hours before he saw a magistrate and did not have access to food during this time. *Id.* at 2–3. As to his allegations of illegal search and seizure, he maintains that summary judgment should be granted because Zeldes stated in the police report that Emesowum was searched and his things were confiscated at the jail. *Id.* at 3.

     In support his Motion for Summary Judgment, Emesowum provides: (1) a police report which reflects that he was arrested for failure to identify himself to a peace officer, (2) a Magistrate Services/Detention Center Arrested Person Registration/Property Form, (3) a notice by the San Antonio Municipal Court setting a hearing for his failure to identify charge, (4) his motion to expedite and dismiss the municipal court action regarding his failure to identify charge, and (5) various receipts. Defendants provide three affidavits—the affidavits of Officers Zeldes and Ruedeman and the Greyhound security guard, Mr. Galbreath. Docket no. 22. Defendants Zeldes and Ruedeman raise the affirmative defense of qualified immunity. *Id.*

Judge Primomo recommended the court deny Emesowum's Motion for Summary Judgment and dismiss the case for failure to state a claim upon which relief can be granted. Docket no. 25 at 10. Judge Primomo found that Emesowum was lawfully arrested and that the officers who arrested him were acting under color of state law. *Id.*

Emesowum subsequently filed objections to Judge Primomo's Memorandum and Recommendation. Docket no. 32. Emesowum makes several arguments. First, he contends that the police officers had no grounds to arrest him for criminal trespass since he went back the Greyhound station that evening and on later dates and was not arrested for trespass at that point in time. *Id.* at 1, 6. He also alleges that the security guard in question attempted to "bully and harass" him again in December. *Id.* at 2. Moreover, Emesowum argues that because he has produced a copy of his ticket and his bank statement showing he had a ticket, summary judgment must be granted in his favor and Defendants should be sanctioned for filing "perjurious hearsay affidavits." *Id.* at 1, 3. He also states that he could not have been trespassing because his ticket proves that he had consent from Greyhound to be present at the station. *Id.* at 3. Emesowum then states that any affidavit provided by the Defendants is hearsay and that they must produce surveillance video if they want to defeat summary judgment. *Id.* at 4. He also alleges that Greyhound has provided an "unequivocal statement that clears [the security guard] was not an employee of Greyhound and was not authorized to act as such" and states that the Defendants should be required to produce "verified authorization" that security guards are authorized to "breach contracts between Greyhound lines and their customers." *Id.* at 5. Emesowum also claims that his arrest was "already fully settled to be a false arrest in a criminal court of competent jurisdiction." *Id.* at 7.

6

Section 1983 prohibits a person, "under color of any statute, ordinance, regulation, custom, or usage of any State" from subjecting, or causing to be subjected, any citizen or any person within the jurisdiction of the United States "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights," but simply provides a "method for vindicating federal rights elsewhere conferred." *Flores v. City of Palacios*, 381 F.3d 391, 404 (5th Cir. 2004). To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995) (citation and internal quotations omitted).

Defendants Zeldes and Ruedeman have raised the defense of qualified immunity to Emesowum's allegations. Docket no. 26 at 5. "Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Once qualified immunity is properly raised, the plaintiff bears the burden of negating the defense, even on summary judgment. *Id.*

Claims of qualified immunity require a two-step analysis. As public officials, Zeldes and Reudemann are entitled to qualified immunity on Emesowum's § 1983 claims unless: (1) Emesowum has shown that the officers' conduct violated an actual constitutional right; and (2) the officers' "actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). The court has discretion to decide which prong of the two-part inquiry to address first. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Brown v. Lynch*, 524 Fed. Appx. 69, 74 (5th Cir. 2013) (citing *Brumfield*, 551 F.3d at 326). Furthermore, "objective reasonableness" is a matter of law for the court to determine. *Id.* A police officer's conduct is objectively reasonable unless all reasonable officials in that officer's circumstances would have known that the conduct violated the plaintiff's Constitutional rights. *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). In other words, "[i]f reasonable public officials could differ as to whether the defendants' actions were lawful, the defendants are entitled to immunity." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (citing *Malley v. Briggs*, 475 U.S. 335, 34 (1986)).

### 1. *Unlawful Arrest*

Emesowum argues that his arrest was unlawful and constituted a violation of his Fourth Amendment rights. Docket no. 1 at 11. He alleges in his Motion for Summary Judgment that he cannot be arrested for failing to identify himself to a police officer, and that because the criminal case arising out of the incident was dismissed, he is entitled to summary judgment on this claim. Docket no. 13 at 1. In response, Defendants argue that based on the information available at the time, "a reasonable officer could have believed he had probable cause to arrest Plaintiff for the offense of criminal trespass" and thus they are entitled to qualified immunity, because the

Greyhound security guard told the officers that Emesowum refused to leave the terminal when asked to do so.  Docket no. 22 at 11–12.

First, the Court will determine if Emesowum produced enough evidence to show there is no genuine issue of material fact and that the officers violated an actual constitutional right when they arrested him.  *Brumfield*, 551 F.3d at 326.  To establish a claim of unlawful arrest, Emesowum must show that, at the time of his arrest, Zeldes and Reudemann lacked probable cause to believe that Emesowum was guilty of a crime.  *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009).  "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Santana*, 427 U.S. 38, 42 (1976).  Importantly, "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).  Moreover, a police officer's state of mind is not relevant to establish probable cause; stated another way, the reason provided by officer for making the arrest need not be the same offense for which the facts provide probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Defendants, via their responsive affidavits, justify their arrest, imprisonment, and seizure of Emesowum's property not based on his failure to identify himself, but his criminal trespass at the Greyhound bus station after having been ordered to leave by the Greyhound security guard.

Section 30.05(a) of the Texas Penal Code provides that "a person commits an offense if the person enters or remains on or in property of another without effective consent and the

person . . . received notice to depart but failed to do so."   Tex. Penal Code § 30.05(a). Emesowum's own Original Complaint notes that he was asked to leave by the security guard but did not do so and also states that Zeldes and Reudemann were aware of that fact.  Docket no. 1 at 3 ("The officer proceeded to erroneously argue with Plaintiff that the security guard had the authority to check Plaintiff's ticket at any time and to ask Plaintiff to leave the station.").

Thus, viewing the facts in the light most favorable to Defendants, the "totality of the facts and circumstances within [Zeldes's and Reudemann's] knowledge at the moment of arrest [were] sufficient for a reasonable person to conclude" that Emesowum had violated the criminal trespass statute.  *See Santana*, 427 U.S. at 42. It is irrelevant that the criminal case arising from the incident was later dismissed.  *See Michigan*, 443 U.S. at 36 ("[T]he mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest."). This Court finds that even Emesowum's account of the incident shows the officers had probable cause to arrest him for trespassing.  It is also irrelevant to our inquiry that the offense listed on the police report is failure to identify; what matters is that the facts show that the officers had probable cause to arrest Emesowum.  *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Emesowum erroneously assumes in both his Original Complaint and in his objections to Magistrate Judge Primomo's Memorandum and Recommendation that only the manager of the bus station could lawfully request that he leave and that because he had purchased a ticket he could not be asked to leave.  This notion is antithetical to the clear weight of well-settled law. *See Ladouceur v. State*, 05-12-00366-CR, 2013 WL 3239431, at *2 (Tex. App.—Dallas 2013) (explaining that an owner or property manager may delegate to security guards or other agents

the authority to keep people off the property); *State v. Jackson*, 849 S.W.2d 444, 446 (Tex. App.—San Antonio 1993) (disagreeing "with any suggestion that the manager of a housing project cannot delegate to security guards or other agents the authority to keep people off the property"). Even if, for some reason, Greyhound's internal policies take the strange position of only allowing a manager to request that a person leave the station, Defendants would not have been privy to any such internal policy at the time of the arrest.   Moreover, purchasing a ticket does not grant a patron unfettered access to a place of business or prevent an employee of that business from ordering the patron to leave. *See, e.g.*, *Jordan v. Concho Theatres*, 160 S.W.2d 275, 276 (Tex. Civ. App.—El Paso 1941, no writ) (explaining that a theatre ticket is simply a revocable license); *Reed v. Chicago, B. & Q. R. Co.*, 84 Neb. 8, 120 N.W. 442, 444 (1909) (finding the same for a train ticket).

Even if it could be argued that Emesowum had shown there was no genuine issue of material fact as to whether the officers had violated his constitutional rights, their actions were not clearly unreasonable in light of clearly established law at the time of the incident. *See Brumfield*, 551 F.3d at 326.   While this Court finds that Zeldes and Reudemann did have probable cause to arrest Emesowum, even if they did not, "reasonable public officials could differ as to whether [their] actions were lawful," given that it is undisputed that Emesowum refused to leave the bus station and the Greyhound security guard apprised the officers of that fact and represented that he had the authority to ask patrons to leave.   *See Zarnow*, 500 F.3d at 408.   At the very least, "officers of reasonable competence could disagree on the existence of probable cause" in this scenario. *See Babb*, 33 F.3d at 477.   Emesowum has not shown that he is entitled to judgment as a matter of law under not just one, but both prongs of the qualified

immunity inquiry, nor has he shown that there is no material issue of fact as to whether at the time of arrest, the officers lacked probable cause to arrest him.   His motion for summary judgment on his unlawful arrest claim is denied.   Given that his own version of the facts in his Original Complaint show that the officers had probable cause to arrest him, the Court finds that he has failed to state a claim for unlawful arrest upon which relief can be granted.   This claim is dismissed with prejudice to refiling.

      *2.   False Imprisonment*

      Emesowum contends that he is entitled to summary judgment on his false imprisonment claim because he was imprisoned following his arrest and did not see a magistrate until several hours after he was arrested.   Docket no. 13 at 3.   Defendants argue that they are entitled to qualified immunity on this claim because the officers had probable cause to arrest Emesowum, making the subsequent imprisonment lawful.   Docket no. 22 at 13.

      To establish a claim of false imprisonment, Emesowum must show that Defendants subjected him to: (1) willful detention, (2) without his consent, and (3) without the authority of the law.   *H. E. Butt Grocery Co. v. Saldivar*, 752 S.W.2d 701, 702 (Tex. App.—Corpus Christi 1988, no writ).   "[I]f the alleged detention was performed with the authority of law, then no false imprisonment occurred." *Wal–Mart Stores, Inc. v. Resendez*, 962 S.W.2d 539, 540 (Tex. 1998). "Legal authority or legal justification is met either by the procurement of an arrest warrant or by the showing of existence of probable cause." *Wal–Mart Stores, Inc. v. Odem*, 929 S.W.2d 513, 519 (Tex. App. —San Antonio 1996, writ denied).

      Here, Defendants had the legal authority to detain Emesowum in jail.   As explained above, the officers had probable cause to arrest Emesowum and so the subsequent detainment

was lawful.  Emesowum's motion for summary judgment on his claim for false imprisonment is denied.  Since his own version of the facts show that there was legal authority for him to be detained in jail, he has failed to state a claim for false imprisonment on which relief could be granted.  This claim is dismissed with prejudice to refiling.

   *3.   Illegal Search and Seizure, Violation of Due Process*

   Emesowum maintains that the officers' subsequent search and seizure of his belongings violated his constitutional rights.  Docket no. 1 at 12.  In his Motion for Summary Judgment, Emesowum argues he is entitled to summary judgment on this claim because the police report states that the officers searched his person and backpack after he was arrested even though he protested.  Docket no. 13 at 3.  He also complains his property was taken to the "property room" once he was in jail, that he had to pay to get it back, and that he was without it for three days since he waited to retrieve it.  *Id.* at 4.  Defendants argue that since the arrest was lawful, the officers were entitled to search Emesowum's person and belongings.  Docket no. 22 at 13.  Moreover, Defendants contend that the City of San Antonio provided a "postdeprivation remedy" by which Emesowum could retrieve his property, invalidating his claim for seizure of property.  *Id.* at 14.

   It is well established that a police officer may conduct a warrantless search of a person incident to the person's lawful arrest.  *Riley v. California*, ––––U.S. ––––, ––––, 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014) ("The two cases before us concern the reasonableness of a warrantless search incident to a lawful arrest . . . [I]t has been well accepted that such a search constitutes an exception to the warrant requirement.").  Since the Court has determined that even Emesowum's own version of facts establish that the arrest was lawful, not only has he shown

that he is not entitled to summary judgment on his claim for illegal search, but he has failed to state a claim upon which relief can be granted.   Additionally, "the fourth amendment is not violated when the police take custody of the property of persons they arrest to store that property for safekeeping."   *United States v. Gravitt*, 484 F.2d 375, 378 (5th Cir. 1973).   Thus, no constitutional right of Emesowum's was violated when his belongings were confiscated while he waited to see a magistrate in jail.   His claims for illegal search and seizure and violation of his due process rights via deprivation of property are dismissed with prejudice.

### *4. Excessive Force*

Finally, Emesowum includes excessive force as a cause of action in this Original Complaint.   Docket no. 1 at 10.   He states that the City of San Antonio "has adopted policies, procedures,  practices or customs within the San Antonio Police Department that allow, among other things,  unnecessary and excessive force . . ."   Docket no. 1 at 10.   The Original Complaint contains no facts that indicate any force, let alone excessive force, was used against Emesowum during his arrest.   His Motion for Summary Judgment does not mention the excessive force claim.   *See* docket no. 13.   Judge Primomo recommended the claim be dismissed since no facts in the Original Complaint point to any use of force.   Docket no. 25 at 9.   The Court agrees.

If a complaint fails to state a claim upon which relief can be granted, a court is entitled to dismiss the complaint as a matter of law.   Fed. R. Civ. P. 12(b)(6).   A claim for relief must contain (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought."   Fed. R. Civ. P. 8(a).   Furthermore, it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Bell*

14

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  Here, Emesowum has not stated any facts that indicate he was subject to any force by any of the Defendants.  This claim is dismissed without prejudice to refiling.

## II.       Motion to Strike and Motion for Leave to Amend

Emesowum filed an Amended Complaint with the Court on January 7, 2016.  Docket no. 35.  The City of San Antonio subsequently filed a Motion to Strike, arguing that Emesowum failed to seek leave to amend as is required by Rule 15 and that in any case, amendment would be futile.  Docket no. 47 at 1.  Emesowum then filed a Motion to Amend and a Response to the city's motion.  Docket no. 50.  In it, he argues that the Motion to Strike should be denied because as a pro se plaintiff, he is held to less stringent pleading standards.  *Id.* at 1.  He also argues that his claims are not futile because the Court could construe the new cause of action alleged in the complaint—"Texas law reckless endangerment"—as negligence, "physical injury," or intentional infliction of emotional distress.  *Id.* at 2; *see also* docket no. 56 at 1.  He also contends that because several other cities "have adopted a disreputable attitude of accusing individuals, especially of African descent, of committing suicide upon arrest" there is a "*potential* mental harm" when a person is transported without a seatbelt and the Court should take heed of the deaths of Freddie Gray and Sandra Bland.  *Id.* (emphasis added).  Emesowum also argues that the city should be forced to compensate him because they have engaged in "corruption" by not equipping police vans with seatbelts and that he plans to file a complaint requiring the city to equip all vans with seatbelts and requiring them to refund all fines for seatbelt violations issued to drivers.  *Id.* at 4.

A plaintiff may amend his complaint once as a matter of course within 21 days after serving it.  Fed. R. Civ. P. 15(a)(1)(A).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P.  15(a)(2).  Emesowum filed his Original Complaint September 22, 2015.  Docket no. 1.  Thus, he may only amend with the Defendants' written consent or the Court's permission.

A district court should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  There is a "bias in favor of granting leave to amend."  *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005).  While leave to amend is not automatically granted, a "district court must possess a substantial reason to deny a request for leave to amend."  *Id.* (internal quotation marks omitted).  "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

However, under Rule 15(a), "[d]enial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment."  *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010).  A district court acts well "within its discretion when dismissing a motion to amend that is frivolous or futile."  *Martin's Herend Imps, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999).  The Fifth Circuit has held that amendment is futile "if the amended complaint would fail to state a claim upon which relief could be granted."  *Stripling v. Jordan*

16

*Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000); *see also Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2008) ("The district court did not abuse its discretion because, for the reasons above stated, the proposed amended complaint could not survive a Fed. R. Civ. P. 12(b)(6) motion and allowing Briggs to amend the complaint would be futile.").   In performing this analysis, courts should apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)."  *Stripling*, 234 F.3d at 873 (internal quotation marks omitted).

The Court finds that granting Emesowum leave to amend would be futile, as the Amended Complaint fails to state a claim on which relief could be granted.  The proposed Amended Complaint states the same causes of action as the Original Complaint and adds two others: (1) "Texas common law claim of reckless endangerment" and (2) "Texas common law claim of aggravated assault pursuant to section 33.013 of the Texas Civ. Prac. and Rem. Code." Docket no. 35 at 14.

First, the claims in the Amended Complaint that are identical to those listed in the Original Complaint—wrongful arrest, false imprisonment, unreasonable search and seizure, denial of due process, excessive force, and unlawful policies and practices by the City of San Antonio—fail for the reasons explained above.  The Amended Complaint adds no new facts that would make any of these claims viable.

As to his claim for "Texas common law . . . reckless endangerment," no such claim exists.  Moreover, his claim for "Texas common law . . . aggravated assault pursuant to section 33.013(B)(2)(D) of the Texas Civ. Prac. and Rem. Code" also fails.  Section 33.013(B)(2)(D) of the Texas Civil Practice and Remedies Code does not create a cause of action.  That section

states that a person convicted of the crime of assault is jointly and severally liable for any damages he or she may have caused. Tex. Civ. Prac. & Rem. Code § 33.013(B)(2)(D).

Emesowum is correct that as a pro se plaintiff, the Court will examine his amended Complaint under less stringent standards. *See Dark v. Potter*, 293 F. App'x 254, 256 (5th Cir. 2008) (explaining that courts hold pro se complaints to a lower standard than those drafted by attorneys). When evaluating the claims of a pro se litigant like Emesowum, a court is to determine whether "within the universe of theoretically provable facts, there exists a set which can support a cause of action under this complaint, indulgently read." *Covington v. Cole,* 528 F.2d 1365, 1370 (5th Cir. 1976). However, having examined the facts Emesowum provides in support of these new causes of action, the Court finds none that could support a cause of action against the Defendants named in this lawsuit.

Emesowum urges that the Court could construe his claim for reckless endangerment as one of negligence or gross negligence. But a plaintiff cannot recover damages for negligence when he has sustained no injury or harm. Under Texas law, "'[a] person who is placed in peril by the negligence of another, but who escapes without injury, may not recover damages simply because he has been placed in a perilous position.'" *City of Tyler v. Likes*, 962 S.W.2d 489, 500 (Tex. 1997) (citing *Gulf, C. & S. F. Ry. V. Trott*, 86 Tex. 412, 420 (1894); Restatement (Second) of Torts § 436A (1965)). Emesowum states that his life was endangered and that he "*could* have been severely injured or killed" since he was placed in a vehicle that had no seatbelts available. He does not allege that he suffered any actual injury while riding in the van, only that he potentially could have been hurt. Such facts do not give rise to a negligence claim. The fact that deaths occurred in other high profile cases while individuals were in police custody have no

18

bearing on the fact that by his own admission, Emesowum was not injured while riding in the vehicle.

As to Emesowum's suggestion that the Court construe his Amended Complaint to state a claim for intentional infliction of emotional distress, he has stated no facts that would support such a claim. To support a cause of action for intentional infliction of emotional distress in Texas, a plaintiff must establish that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Wal–Mart Stores, Inc. v. Canchola*, 121 S.W. 3d 735, 740–41 (Tex. 2003); *Morgan v. Anthony*, 27 S.W. 3d 928, 929 (Tex. 2000). "'Severe emotional distress' means distress so severe that no reasonable person could be expected to endure it without undergoing unreasonable suffering." *Pinson v. First Fin. Capital Corp.*, Civ. Ac. No. 14-05-00353-CV, 2006 WL 6319822, at *4 (Tex. App.— Houston [14th Dist.] Aug. 24, 2006, no pet.) (citing *Williams v. First Tenn. Nat'l. Corp.*, 97 S.W.3d 798, 804–05 (Tex. App.—Dallas 2003, no pet.)). The Amended Complaint contains no facts that indicate Emesowum experienced any severe mental distress. He does allege that he was separated from his laptop for a few days and states, without providing any other detail, that this caused him emotional distress. Docket no. 35 at 13. However, this is not an allegation of severe emotional distress, which requires "more than mere worry, anxiety, vexation, embarrassment, or anger." *Pinson*, 2006 WL 6319822 at *4.

Furthermore, even if the Court concluded that one of Emesowum's new state law causes of action presented a cognizable claim, given that the Court dismissed all of the federal claims in the case, the Court would not have subject matter jurisdiction over the case—the parties are not

diverse and there would remain no federal question.  The City of San Antonio's Motion to Strike is granted and Emesowum's Motion for Leave to Amend is denied as futile.

### III.    Motion to Quash

The City of San Antonio filed a Motion to Quash Subpoenas on the grounds that subpoenas sent to the city demanding that it produce records and surveillance video were improper, overbroad, and requested irrelevant information.  Docket no. 39 at 1–2.  The subpoena at issue ordered the city to produce all complaint and disciplinary records for the defendant officers, all "[s]tatistical data of complaint [and] disciplinary records for the San Antonio Police Department between 1/1/2008–08/15/2015," and all "jail [and] transporting van surveillance audio and video of Plaintiff on 08/15/2015 while is SAPD custody."  Docket no. 39-1 at 1.  The subpoena also demands that the city allow Emesowum to inspect all jail vans owned by the city.  *Id.*  The city points out that the proper vehicle to request discovery from an opposing party would be a request for production under Rule 34, not a subpoena.  *Id.* at 1.  The Court agrees.

Requests for documents from an opposing party are normally made pursuant to a request for production under Rule 34—not a subpoena *duces tecum* under Rule 45.  *See, e.g.*, *Front–Line Promotions & Marketing, Inc. v. Mayweather Promotions*, 2009 WL 928568, at *5 (E.D. La. 2009) ("[P]ursuant to Federal Rule of Civil Procedure 45, a subpoena is an improper mechanism for seeking discovery from a party to the litigation."); *Thomas v. IEM, Inc.,* 2008 WL 695230, at *2 (M.D. La. 2008) ("Rule 45 subpoenas, although not technically precluded by the language of Rule 45 from being served upon parties to litigation, are generally used to obtain documents from non-parties and are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34.").

20

However, even if the Federal Rules did not indicate that Emesowum's use of a subpoena was improper, the Court would still find fault with the subpoena.  A court may quash or modify a subpoena if it: (1) fails to allow a reasonable time for compliance; (2) requires a person who is not a party to travel more than 100 miles from where the person resides; (3) requires disclosure of privileged or protected matter; or (4) subjects a person to undue burden.  *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818–19 (5th Cir. 2004).   To determine whether the subpoena presents an undue burden, courts consider the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed.  *Id.*   Additionally, a court may find that a subpoena presents an undue burden if the subpoena is overbroad.  *Id.* at 818.

The subpoena served by Emesowum subjects the city to an undue burden.  To begin, it commands the city to produce all documents relating to Zeldes's and Reudemann's disciplinary records.  It is unclear how such information would be relevant.  Furthermore, the request for all data related to all police officers employed by the San Antonio Police Department between January of 2008 and August of 2015 is incredibly burdensome, vague, and overbroad.  As to the surveillance footage of the transport van and the request to inspect all police department vans, the Court concludes that such discovery is irrelevant for the reasons explained above— Emesowum has stated no viable claim for which he would need such evidence.

Defendant's Motion to Quash is granted.  The subpoena addressed to the City of San Antonio is quashed in its entirety.

## IV.     Motions for Sanctions

Emesowum filed two motions for sanctions—one on April 25, 2016, (docket no. 62) and one on April 26, 2016 (docket no. 63).  In the first motion, Emesowum requests that the Court sanction Greyhound and Robert Quintero, a manager at Greyhound.  Docket no. 62 at 1.  He complains that they failed to comply with a subpoena that requested documents and argues that this failure to comply "undermines the proper execution of justice."  *Id.* at 2.  His proposed order seeks $1,500 in sanctions.  *Id.* at 3.

While neither Greyhound nor Quintero filed a motion to quash the subpoena at issue, the Court finds the subpoena is defective because Emesowum failed to personally serve the subpoena per the requirements of Rule 45(b).  Rule 45 provides that "[s]erving a subpoena requires delivering a copy to the named person . . . ."  Fed. R. Civ. P. 45(b)(1).  The Fifth Circuit has held that personal service of a subpoena is required.  *In re Dennis*, 330 F.3d 696, 704 (5th Cir. 2003) ("[T]he rule indicates that proper service requires . . . personal delivery of the subpoena . . . .").  Service of a subpoena by certified mail is improper.  *See Omikoshi Japanese Restaurant v. Scottsdale Ins. Co.*, 2008 WL 4829583, *1 (E.D. La. 2008) (holding that service of a subpoena for records on a non-party by certified mail was improper).

Here, Emesowum attempted to serve both Greyhound and Quintero via certified mail.  Docket no. 62 at 5 (providing a photocopy of the mail receipts).  The Court therefore finds that Emesowum failed to comply with Rule 45(b)'s personal service requirement, rendering the subpoenas invalid.  Greyhound and Quintero had no obligation to comply with an invalid subpoena, and thus the Court finds no grounds to sanction them.  Emesowum's motion to sanction Greyhound and Quintero is denied.

In his second motion for sanctions, Emesowum requests sanctions against City of San Antonio, Zeldes, and Ruedemann because he claims they responded to his interrogatories late and did not comply with his requests for production.  Docket no. 63 at 2.  Additionally, he contends that the objections raised by Defendants in response to some of his discovery requests were "fallacious" and "frivolous."  *Id.*  His proposed order requests that the Court order Defendants to answer all interrogatories, provide him all documents he has requested, and pay him $500 each in sanctions.  *Id.* at 4.

Emesowum mailed his interrogatories and requests for production to the City of San Antonio, Zeldez, and Reudemann on March 11, 2016.  *Id.* at 1, 20 (providing a photocopy of the envelope).  Rule 33(b)(2) provides that a party "must serve its answer and any objections within 30 days after being served with the interrogatories."  Fed. R. Civ. P. 33(b)(2).  However, Rule 6(d) states that "when a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C) . . . , 3 days are added after the period would otherwise expire under Rule 6(a)."  Fed. R. Civ. P. 6(d).  As a result, the Defendants' responses to Emesowum's interrogatories were due 33 days later, on April 13, 2016.  Emesowum stated he received the city's responses on April 13 and Zeldes's and Reudemann's responses on April 15.  Docket no. 63 at 1.

As to his complaint that the city "failed to comply with discovery requests" and gave "fallacious" and "frivolous" responses, Emesowum has failed to comply with this Court's Local Rule CV-26(a), which provides:

> If relief is sought under Federal Rules of Civil Procedure 26(c) or 37(a)(3), concerning any interrogatories, requests for production or inspection, requests for admissions, answers to interrogatories or responses to requests for admissions, copies of the portions of the

> interrogatories, requests, answers or responses in dispute shall be
> attached to the motion.

Local Rule CV-26(a).   Additionally, his motion does not specify which particular responses or objections he finds to be unsatisfactory and worthy of sanctions, nor does it explain why any particular response provides cause for sanctions.   Since the City of San Antonio's responses were timely filed, and Emesowum has failed to comply with the Court's local rule and provide a copy of the responses, the Court has no basis to order sanctions against the city. As to Zeldes and Reudemann, the responses were submitted only two days late.   Rule 37(d)  states that "[t]he court where the action is pending *may*, on motion, order sanctions if . . . a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response."   Fed. R. Civ. P. 37(d) (emphasis added).   "District courts have considerable discretion in managing discovery." *Munoz v. Orr*, 200 F.3d 291, 305 (5th Cir. 2000) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 789 (5th Cir. 1990)).   Because of the small delay and Emesowum's failure to abide by the local rule, the Court will decline to sanction Zeldes and Reudemann.   Emesowum's second motion for sanctions is denied.

## V.    Other Motions

As the Court has dismissed all claims, all other pending motions in the case (docket nos. 57 and 58 and the extraneous motions in docket no. 46) are dismissed as moot.

## CONCLUSION

The Court ACCEPTS the Magistrate Judge's recommendation (docket no. 25).   Plaintiff Benedict Emesowum's Motion for Summary Judgment (docket no. 13) is DENIED.

Plaintiff's claims for unlawful arrest, false imprisonment, and illegal search and seizure against all defendants are DISMISSED WITH PREJUDICE and his claim for excessive force is DISMISSED WITHOUT PREJUDICE.

Defendant City of San Antonio's Motion to Strike (docket no. 47) is GRANTED. Plaintiff's Motion to Amend Complaint (docket no. 50) is DENIED.

Defendant's Motion to Quash (docket no. 39) is GRANTED.   The other pending discovery motions (docket nos. 57 and 58) are DISMISSED as MOOT.

Plaintiff's Motions for Sanctions (docket nos. 62 and 63) are DENIED.

The motions contained in Plaintiff's Response to the Memorandum in Recommendation (docket no. 46) are DISMISSED as MOOT.

The Clerk's Office is instructed to close the case.

It is so ORDERED.

SIGNED this 27th day of June, 2016.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE